Good morning. The Court. May it please the Court. My name is Mary Pogalis. I'm up on my tiptoes here. Unfortunately, I don't think that podium can be adjusted. No, it's fine. It's fine. I'm just used to being the tall one at the bench, so it's unusual. In any event, so I'm here for Mr. Robinson. I have a couple of key points to reinforce with you from the brief. If you have questions, of course, I want to answer those, but I'd like to start with making these points. First, the Riley case from the United States Supreme Court mandates a search warrant before a cell phone is searched. It doesn't say it's good enough to get a search warrant for an apartment where you might find a cell phone. It says you must have a search warrant before you search a cell phone. I'm not really challenging the seizure of these items. I think that may well have been appropriate. But the search of them required a second warrant. Why is that the case, though, if the original warrant authorized an inspection of electronic devices for the 17 items enumerated in Schedule B? Let me finish the question. On which the magistrate had already concluded that there was probable cause to warrant searching and seizing such items? Well, I don't know that the magistrate determined that. The search warrant wasn't clear. The search warrant wasn't clear that there was probable cause to seek the records that were sought of electronic devices? Oh, no. I'm sorry. We're maybe talking past each other. We are. Yes. Okay. So if a neutral and detached magistrate has already made that determination and the warrant specifically authorizes the inspection of electronic devices to look for information, what purpose would be served by requiring a second warrant to be sought after the first warrant authorized the agents to look in those places? The purpose to be served is laid out in detail in Riley. It's not optional. But Riley was a search incident to arrest. I understand. So there was no neutral and detached magistrate that had passed upon the probable cause determination? There was never a magistrate that passed on probable cause that these items would be found on those cell phones and that laptop. I'm sorry. Go ahead. Is there any court that's read Riley the way you're suggesting? Not in the context of a search incident to arrest, but in the context where you're looking specifically for information on electronic devices? You know, I can't answer that, but I can tell you that it's clear to me from Riley and other decisions that have come out that the entire thrust of the law in this area and the Supreme Court's direction on this is very clearly that there are. Which other decision? Give me one or two you think are most helpful. Well, I mean, I think even some of the pre-Riley decisions show that we're going in that direction. The Payton case that I cite in my brief here. The Giberson case that's cited here. I'm not sure how to pronounce it. Sedigotti case. Right.  It is Sedigotti. Thank you. You know. Okay. But aren't those cases, of course, recognizing there's personal information in these cell phones. But this warrant specifically authorized search of electronic information. Where's that going to be found? Computers and cell phones. Electronic information is very different than searching a cell phone. If I pull my cell phone out here, you might have reason to think. And a magistrate may be right. I don't think that's an electronic device under the warrant. My cell phone? Yeah. But this wasn't a search warrant for electronic devices. It was a search warrant for electronically stored documents. Yeah. In electronic form. Right. Right. Let me see if I can summarize your argument. Your argument is, based on Riley, that because of the medium in which the incriminating evidence is contained, i.e., a cell phone or a laptop computer, that that requires a super warrant. That if it were contained in 17 file cabinets of paper, it would have been just fine for the agents to look through the 17 file cabinets for paper. But because it's in electronic form, that's super protection under the Fourth Amendment. Isn't that your argument? No. That is not my argument. Then how does this differ from looking in 17 file drawers versus looking in an electronic storage device that can contain as much incriminating information as 17 file drawers? It's different because the Ninth Circuit and the U.S. Supreme Court and Riley have said cell phones are huge. A person's whole life can sit in them. Nobody's just sitting there. All their contacts. But isn't your argument basically doesn't it turn on the categorization of the storage medium? No. It turns on you don't get to search a cell phone without a search warrant specific to they needed to go back to the magistrate and say, all right, we executed the search warrant. We found all of this. We found a laptop computer. We found five cell phones. We have reason to think because we found all these documents sitting on the tables around them. We found all this other stuff. We now think that these cell phones tied to this operation contain information relevant. But you would concede that had the agents walked in and found a room full of file drawers with the warrant in hand that had previously been approved, they could have opened each and every file drawer and looked through each piece of paper in every file in the file drawer without having to go back for a second warrant. Well, you're asking a big concession from me without all the facts. But let's say it's simple. Not necessarily. If the file cabinet had a drawer that was labeled my child's school records. Now, I don't know that they get to go in there and look at those. When they're seeking documents containing incriminating evidence of identity theft and false claims against the United States? Well, I'm just responding by saying I don't think it's that clear. But on the other hand, I understand, I think, what your point is. Well, it's your point. I'm trying to understand the distinction that you're asking us to make here. And I know you're fighting me on it. I appreciate why you're fighting. And enthusiastically. And enthusiastically. And I appreciate that, counsel. But I'm just trying to, if we were to write an opinion here, I'm trying to figure out how we can explain to Ms. Chan and her agents that when they're in a situation like this the next time around, with warrant in hand and probable cause to look for incriminating evidence in electronic form, that what's the bright line rule here? If it's in a computer, go get a warrant. That's your argument. Yes. The bright line is seize those cell phones, seize that laptop, go back to the magistrate and make your showing specific to those storage devices, and then you can search them. I've got a different question. Is attachment A part of the warrant? Is it? Attachment A is the list of no, attachment B is the list of no. It's not? No, it was not incorporated by reference. And it should not have. It was a point I was going to make. You know, I see I'm coming up on two minutes. Don't worry. Don't worry. We'll let you talk. All right. Or maybe we'll let ourselves talk and you'll answer. But don't worry about the time running. So let me get back to this. So attachment A is not part of the warrant? It was not incorporated by reference. And Groh v. Ramirez requires when you review de novo a search warrant, you can look at the warrant and any documents incorporated by reference. Okay, got it. It wasn't. Okay, I got it. Now, I understand it's not part of the warrant. But I want to ask about it anyway. It specifies two cell phones and one HP notebook. Now, were they actually, I mean, you said six cell phones and one computer. Was this the computer? You're saying the affidavit references that? No, I'm looking at attachment A. And it says description of items to be searched. Samsung Galaxy cell phone, Samsung Galaxy cell phone, HP 2000 notebook PC. Oh, now, those phones were from a later search warrant. Those were, I think you're talking about the search warrant executed about several months later after they put the pieces together. Those had been seized from Mr. Robinson when he was stopped at the Oakland airport. Maybe I'm looking at the wrong, so could you point me to the right warrant then? Because I've got a warrant here that's got attachments A, B, and, I've got something that has attachments A, B, and C. I'm looking at the wrong thing then? I think you're looking at the right one. Because attachment B is all these things, description of items to be seized, and attachment C is the protocol. Excuse me. Tell me what the date is on that. That will tell us. 4-15 of 15. Oh, all right. Well, not necessarily. It may be attached to the affidavit. Yeah, they incorporated the results from the first. They didn't specify in attachment A. In fact, the affidavit that the agent put in for the first search warrant, for the Church Lane search warrant, had like a one-sentence brief reference to some number, telephone number, that they said, that he said solely was connected to Mr. Robinson in public records. It was one sentence. It was one number. There was no reference to anything else other than the fact, of course, that some of these returns had been filed electronically. Well, what bothers me about this case is that it's quite apparent that if you go attachment A, B, and C, whatever I've been reading here, that we have specified actual cell phones and computers to be searched. That can't be right. Hang on. Okay. And things that then are to be searched for, and then there's a protocol to search. But apparently the warrant we have here does not specify any specific cell phones, does not specify any specific computer, does not specify a protocol. The only thing we have is you can look for the following items, which may be in electronic, handwritten, or typewritten form, but there's no specification as to any device, and there's no specification as to any protocol. That strikes me as a deficient warrant. Me too. And also the fact that they seized every device they found in the place. Let me direct both of your attention to ER 114. Okay. Which I don't have with me. The search and seizure warrant authorized by Magistrate Judge, I guess it was Nandor. Nandor Vadas, my old colleague. Right. And it specifically refers, on the face of the warrant, to C attachment A2, description of the premises to be searched, and then it specifically incorporates C attachment B, which is incorporated by reference. Only B was incorporated by reference. Well, it also incorporates attachment A2 on the face of the warrant, does it not? Well, no. I'm looking right here. Well, that's the description of the premises. Yeah. So that's not a description of items to be searched. Right. But it's the language from B that we were focusing on, at least that I was focusing on in my question. Well, you were, and I was too. But the only thing that B tells you is, here are the things you're supposed to be, the documents you're supposed to be searching for, whether electronic, handwritten, or typewritten. But there's nothing attached to this warrant or incorporated in this warrant that describes any cell phones or computers, and there's nothing that describes a protocol for searching the computer or the cell phones. I agree. And I think that's important. So how would the agents know, before they go into the house, specifically what computers and what cell phones are there? They wouldn't. That's the problem. That's why they can seize. How could you ever get probable cause? From everything they found there. Yeah. They found a lot there. And they talked to Mr. Robinson there, and they could have taken that and should have, and I think under the law we're required to take that, go to a magistrate and get a second warrant. I think they could seize those items so they wouldn't be destroyed. What additional probable cause showing would be required? What facts would have to be alleged in addition to everything that's contained in the initial affidavit supporting the issuance of Search Warrant 1? The same probable cause you have to show for any item, which is we have reason to think these items are here, in this cell phone, on this laptop. We have probable cause to believe it's there. But the magistrate has already authorized the seizure of evidence of criminal offenses, including, in this case, identity fraud and submission of false claims to the government in whatever form, such as electronic. So I think the answer to my question is the only additional fact that could be alleged is that when we arrived at the premises armed with a search warrant, looking for incriminating evidence in electronic form, we found a computer. And now we want Search Warrant 2 to search this computer. Yes, and I think they were. That's the only additional fact. And why is that constitutional? Well, no, there are many additional facts. Why is that constitutionally required in the face of the first warrant? The warrant was overbroad. That statement, seize it in whatever form you find it, including electronic, was overbroad, especially in light of Riley's. But the affidavit outlines all of the means by which the defendants committed the crimes. Yes. Including the submission of false tax returns electronically. What additional showing is required under the Fourth Amendment? That they were on this cell phone, likely to be on this cell phone and this computer. This was an apartment where five people were living. And what's done with the IP address? They seized every item there. Wasn't that done with the IP addresses? In other words, the reason that we focused on the Church Lane location was because the IP number associated with the devices on which the tax returns were submitted came back to that address. That was one of the reasons. So, all right. Yeah, you and I, we could do this for half an hour.  This will only take another couple of minutes. Yes, I see it as Everything so far has been exceedingly interesting, but I've got another question. Oh. Assuming that this evidence was improperly seized, there's an argument that it's harmless because the evidence, the other evidence at trial was so overwhelming. I'm inclined to accept that argument. Why am I wrong if I accept that argument? I think you're, I think you would be mistaken to not at least send it back for hearing on that issue, because I don't know about you, but I found myself kind of throwing my hands up in the air as an appellate attorney looking at this huge record. I went back trying to figure out what the source was of all the different orders and the different ways that they found things, the subpoenas they went to for records, and it was not possible with what I had to do so. I can't identify what the fruit was on this record. Counsel, do you agree that the agents seized two cell phones and one computer? No. They seized five cell phones and one laptop computer. Okay. But the evidence at trial, they admitted, they claimed, was just from the two cell phones and the one computer. And then several months later, they did a search warrant on two more cell phones and another laptop they'd taken from Mr. Robinson months before. So altogether at the airport. Now, they had a search warrant for that, but they used information from the phones and computers searched at Church Street to support probable cause to get those. To get the search of the airport cell phones? Yes. Okay. So I'm saying the fruit is nearly impossible to identify. I see no harm with sending this back. It seems appropriate. I'm not asking that you reverse the conviction, but that you send it back for a hearing now with the instruction that the warrant was wrong. It should have been suppressed. Now let's decide what the scope of that is. And it may well turn out that the scope is very limited and it doesn't make any difference. I don't think any of us are in a position to say that now. And it's just not fair to Mr. Robinson, serving 12 years in prison, to not have some kind of finding based on an actual review of all this that it was, in fact, harmless. Okay. Good. Let's hear it from the other side, and we'll give you a chance. Thank you. Thank you. Thank you. May it please the Court, my name is Mary Jean Chan, and I represent the United States in this appeal. This Court should affirm. Riley says that you need a search warrant. There was a search warrant here, and it was not facially invalid. The warrant itself says that it authorizes agents to seize 17 categories of evidence, including categories 11 through 13, which specify records and information, and in electronic form. As the district court found, there was no reasonable interpretation of that but to allow the agents to search digital devices that would be repositories of this evidence, including cell phones and computers. But that makes it overbroad if they can pick up every cell phone and computer they find in the place, because they've got lots of people there. I mean, how do you know that the computer or the cell phone is connected to this person? So if they're allowed, based on this warrant, to search any computer, any cell phone found in the premises, I think that makes it an overbroad warrant, doesn't it? No, I disagree, Your Honor, because they're cabined by what they're searching for, which is those 17 categories of evidence. But they don't know. Here's a cell phone. It's lying on the table. And, yeah, it might have it in it, but I don't know until I look for it. Well, it turns out it's a cell phone belonging to somebody else. It has highly personal information in it. It's totally irrelevant to the investigation. And as you would read the warrant, any computer, any cell phone found in the premises is open to search. Under this particular warrant, yes. Not for every single warrant, but yes. Well, but you know this one. Correct. I'm talking about this one. Right. And it strikes me that if that's how you read it, and they don't have, there's no obligation to connect the particular computer or the particular cell phone to anything connected to this defendant, it's overbroad. Well, this warrant wasn't searching for this defendant. It wasn't targeted towards defendant. If you look at the affidavit, it was this residence. And that was because the IRS, the fraudulent tax returns that had been filed with the IRS were traced to an IP address that was located at this address, the Church Lane address. So it wasn't just about Mr. Robinson. I think the investigation at that point named him once, believed that he was connected to the fraudulent offenses that were being investigated, but it wasn't isolated towards Robinson. So I think it is false to say that the warrant had to specify devices specific to Robinson. So, yes, I think that in the ---- But maybe it has to specify somehow connected to this criminal activity. You've got lots of people in there. Some of them may be criminals. Some of them may not be. Some of them may be involved in the criminal activity. Some of them may not be. But as you read the warrant, any cell phone, any computer found on the premises is open game. But any room was also open game. Any file cabinet was open game as well. And there was ---- But those are different for reasons that we've already been discussing, that you can't open a computer in the same way and on the same basis you can open a file cabinet. Well, so I actually disagree. I know that there's been a distinction, for example, in Riley and some of the other cases in this Court that talk about the quality, the qualitative difference between a computer or a cell phone and, let's say, the traditional file cabinet. But in the context of a search warrant where there's probable cause to search a residence and the discretion of the searching agent's cabin very specifically by the 17 categories of evidence, yes, they can go and open up that computer and see are there ---- is there going to be evidence of these categories. They can't go willy-nilly and search for child pornography or go into ---- they can't continue to go and probe into areas where they have a reason to find that there's nothing there. But they can open up the computer. They can open the cell phone because otherwise how would they know whether this device does or does not contain the evidence that they're looking for? This case wasn't cited in the briefs, but the courts and bank decision in CDT specifically says that in the era of electronic evidence, we know that there's going to be overbroad sort of seizures. And that's why it's so important that we rely on magistrates to craft protocols which guide. They're not constitutionally required, but those search protocols guide the way that the government does sort of segregate data. They get to look into the devices, but then they have to sort of cabin what they can look at, how they can use it, how they're going to return the devices. But, Counselor, weren't the protocol in Attachment C here? The protocol was in Attachment C, and the Attachment C was submitted to the magistrate. It was not incorporated by reference in the search warrant, but that just simply means, but I think the agent, Agent Mitchell, testified that he believed that he was bound to it. There's been no allegation. Did he follow the protocol? The agents followed the protocol? Yes. And there's been no allegation here that the protocol wasn't followed. It's a very, very sort of basic argument that's being made, which is that it wasn't handed. This protocol was not handed over to the two residents, Missouri Reed, as well as Robinson himself, at the residence when the affidavit, sorry, excuse me, when the warrant and the inventory were handed to them. So when they were given the inventory, when they were given the search warrant, they didn't also get Protocol C, excuse me, Attachment C, which set out the search protocol. But if you look, the application specifically says Attachment C is included in it. The affidavit itself talks about, you know, the kinds of electronic evidence that are expected to be at the heart of this. I mean, this is an electronic offense. We're not talking about the possession of firearms where they're going in, the agents are going in to look for physical evidence of an AR-15. They're looking for evidence of how somebody filed false tax returns electronically. So I think it's absolutely the case that the warrant itself explicitly authorizes the seizure and the search of these electronic devices. And – Counsel, would you respond to your opposing counsel's argument about the fruit of the poisonous tree, that she claims that the agents got the warrant for the church lane residents, seized those devices, used the information obtained there to get a search warrant for the devices seized from Robinson at the airport a few months earlier? So I believe that if you look at the affidavit or the application for that subsequent warrant, it does include a line about what was the results from the church lane devices. But I think that the way this Court analyzes it, if you excise that from the warrant application, do you still have enough probable cause to search that warrant? Does that warrant still succeed? I think the answer here is definitely yes. It's simply one single sort of reference to Robinson's cell phone device in the context of a mountain of other evidence. That is not at issue here. The agents, when they went to search church lane, they found hundreds and hundreds of checks that were not in Robinson's name. They found access devices in other people's names with Robinson's picture on them. You're now just talking about physical things they found. No, I'm talking about just the physical things. And these were both used to support the subsequent warrant applications, as well as what was introduced at trial, which supports the harmless beyond a reasonable doubt argument that we've made in this case. We don't think you have to get there, but the fact is there was a mountain of evidence, including Robinson's own confession, that he had indeed stolen, used these, he had filed these false tax returns. He had cashed these checks that didn't belong to him. And during the interview with Agent Mitchell, a cell phone text came up talking about Los Angeles. The agent said, what is this about? He said, oh, I'm using my cell phone to communicate with the person who is my supplier of more false checks. I'm going to L.A. to get more false checks. So we have his confession. We have then probable cause also to support that there would be certainly evidence on his cell phone and cell phone devices, apart from what was already established in the warrant application. So that also falls into the Giberson and Payton land of having reasonable belief that's developed on scene at the time of the search to support the search of the digital devices. We have all of that. So the position that we are maintaining, the government maintains, is that this was a facially valid warrant. It was reasonably executed. And there should be no concern about suppression or those remedies, because we simply don't get to that point. And certainly, if we do have to get to that point, when we look at the actions of the officers, we think that we have a very strong good faith argument here, because we have text in the warrant that supports the agents doing what they did, which was to search the computers and cell phones. We have case law, the Giberson case and the Payton case, that support that when you have reason to believe that the evidence that you're searching for might be contained on the computers and the cell phones on site, that you can go and search those. So we don't have any concern that they, I think. And then we have a situation where, subsequently, when the officers are faced with looking at the cell phones from a different, that were obtained from the search incident to arrest context, that they went and specifically got a separate warrant. So we have many good reasons to believe that if we ever get to that point, if this Court gets to that point, that all the actions taken by the officers were undertaken in good faith. I do want to, again, just point the Court to Excerpts of Record 114 and 142, just to clarify that attachment B, which specifies the different categories of evidence to be searched and seized. Was incorporated by the warrant. Also pointing the Court to Categories 11, 12, and 13, that talk about records and information. Information, I think, clearly talks, in combination with the fact that we're talking about evidence in electronic form, refers to the ability to search and seize computers and cell phones. We believe that this Court should affirm. Can you help me out? I'm now on ER 110. 110, yes. Attachment A, Description of Items to be Searched. Is that an application for a different warrant? That is a different warrant. So the application that we're talking about here, or the warrant that we're talking about here, starts on ER 114. Yeah, I've got that one. And then, so what we have here is actually not the specific warrant. What we have is what was returned to the Court. So you have the face sheet of the warrant, as well as the inventory. So the inventory are the couple of next pages up until page 119. And then after that is the application for the search warrant, which includes attachments A, B, and C. Got it. Okay. Thank you, Your Honors. Now, we took you well over time, but would you like two minutes? No, I just have a couple of comments to make in response. First, the comment counsel just made about the defendant's confession in terms of a harmless error analysis. Let me say, first of all, I'm the last person who's going to argue that the evidence that went in here was inadequate to sustain these convictions. It was overwhelming. I get that. I'm not arguing otherwise. But I don't think it's clear how much of that would have been off the table, had a proper suppression order been issued, and the fruit had been figured out and excluded from the trial. I really urge you to send this back for that hearing. But even if we did that, if you take his confession coupled with the actual false returns themselves, isn't that sufficient to support his conviction? You just heard counsel say, Agent Mitchell went up to the defendant with his cell phone and said, here, I've got your cell phone and all this stuff on it. Do you want to talk about it? The cell phone was used. The contents of it were used to get the confession. I do have one other question. You had challenged the jury instruction, and I'm wondering why that issue is not invited error, given the fact that, and I realize you were not counsel at trial, but counsel basically made no objection to the jury instructions or the verdict form and stipulated to the instructions, but now argues that they're insufficient. He did ask before the jury was instructed. He objected that there had been inadequate proof of means of identification. In other words, he was objecting to the government's theory. I understand, but the challenge is to the sufficiency of the jury instruction, is it not? Right. I think that the court had a sua sponte duty actually to add that correction in once the prosecutor went on in such detail repeatedly saying, this is the theory, this is all you need, you only need a name and a signature. That's all. I mean, that was said repeatedly. Forget about all the rest of it. Not forget. That's overstating. But definitely telling the jury that is means of identification. Well, it's not. And there should have been clarification at that point by the court. Counsel, there was no objection from defense counsel during the oral argument or the closing arguments. Was there? No, but he did make a motion for a new trial based on that error, and he did object before instructions were given to that theory that it was inadequate. But after he had already stipulated to the instructions and the special verdict form. I can't. I mean, the record is the record. Okay. So I'm not going to argue with you about that. All right. Thank you. Thank you both for good arguments. United States v. Robinson submitted.
judges: W. Fletcher, Tallman, Morris